IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF HAWAII

| | | |
|---|---|---|
| SAMUD IMAI, | ) | CIV. NO. 04-00583 BMK |
| | ) | |
| Plaintiff, | ) | |
| | ) | ORDER GRANTING |
| vs. | ) | DEFENDANTS' MOTION TO |
| | ) | DISMISS AND/OR FOR |
| HALE KOA HOTEL; FRANCIS J. | ) | SUMMARY JUDGMENT |
| HARVEY, Secretary, department of | ) | |
| the Army, | ) | |
| | ) | |
| Defendants. | ) | |
| | ) | |
| _____ | ) | |

ORDER GRANTING DEFENDANTS' MOTION TO DISMISS AND/OR FOR
SUMMARY JUDGMENT

Plaintiff Samud Imai is a woman of Thai origin who was employed as

a custodial worker at the Hale Koa Hotel ("Hale Koa") in Honolulu, Hawaii from

1989 until her termination on March 11, 2003.  (Pl. Opp. 2.)  Ms. Imai brings

claims under Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e, et seq.,

alleging discrimination based on race, national origin, gender and retaliation for

prior EEO activity.  Because there is no evidence indicating that the decision to fire

Ms. Imai was influenced by discriminatory motives, the Motion is GRANTED.

1

BACKGROUND

The central events leading to Ms. Imai's termination occurred on or about January 5, 2003. On that date, Ms. Imai was working the evening shift at Hale Koa. Her immediate supervisor was Kathleen Hamlin, an Evening Shift Manager. Another supervisor, Emily Lelis, signed out a set of hotel master keys which was attached to a red lanyard (hereinafter "red master keys"). Ms. Lelis gave the red master keys to Ms. Hamlin. Ms. Hamlin left the red master keys in the doorknob of an office near where Ms. Imai was cleaning. Later that evening, Ms. Hamlin and Ms. Lelis realized that they did not have the red master keys and began searching for them.

On the same evening, Ms. Imai signed out a different set of master keys on a green lanyard (hereinafter "green master keys"). During the course of her shift, Ms. Imai was questioned several times by Ms. Hamlin and Ms. Lelis about the missing red master keys, and on at least one occasion they shook her apron without locating the red master keys. Shortly before the end of her shift, Ms. Imai stopped by the women's locker room, picked up a trash bag, walked to the hotel dumpster and threw away the trash bag. At the end of her shift, Ms. Imai claims that she returned the green master keys and went home. On the morning of

2

January 6, 2003, a hotel custodian, Leandro Abaggo, found the red master keys in

the hotel trash compactor.

John Lee, the Director of Rooms at Hale Koa, and Winnie Nemoto,

the Housekeeping Services Manager, conducted an investigation into the

circumstances surrounding the loss of the red master keys.  Among other

information reviewed was a closed circuit videotape that captured images of Ms.

Imai as she walked from the women's locker room to the dumpster.  In the images,

Ms. Imai is seen to be carrying a lanyard.  When Mr. Lee and Ms. Nemoto

reviewed the tape they formed the opinion that the lanyard in the images was red

and matched the shape of the lanyard attached to the red master keys.

Following the investigation, Ms. Nemoto proposed terminating Ms.

Imai.  Mr. Lee concurred with the recommendation and made the decision to fire

Ms. Imai.  On March 11, 2003, Ms. Imai was informed that she would be fired.

The investigation also resulted in sanctions for Ms. Lelis and Ms. Hamlin for

failing to follow hotel procedure in their handing of the red master keys: they were

suspended for one day each.[1]

## STANDARD OF REVIEW

---

[1]  It is the policy of Hale Koa that keys must be signed out, that employees are responsible for the keys they sign out, and that the keys must be signed in by the individual who signed the keys out before anyone else may use them.

A motion for summary judgment may not be granted unless the court determines that there is no genuine issue of material fact, and that the undisputed facts warrant judgment for the moving party as a matter of law.[2]  <u>See</u> Fed. R. Civ. P. 56(c).  In assessing whether a genuine issue of material fact exists, courts must resolve all ambiguities and draw all factual inferences in favor of the non-moving party.  <u>See</u> <u>Anderson v. Liberty Lobby, Inc.</u>, 477 U.S. 242, 255 (1986); <u>see also</u> <u>Cline v. Indus. Maint. Eng'g & Contracting Co.</u>, 200 F.3d 1223, 1228 (9th Cir. 2000).

In deciding a motion for summary judgment, the court's function is not to try issues of fact, but rather, it is only to determine whether there are issues to be tried.  <u>Anderson</u>, 477 U.S. at 249.  If there is any evidence in the record from which a reasonable inference could be drawn in favor of the non-moving party on a material issue of fact, summary judgment is improper.   <u>See</u> <u>T.W. Elec. Serv., Inc. v. Pac. Elec. Contractors Ass'n</u>, 809 F.2d 626, 631 (9th Cir. 1987) (summary judgment must be denied if a rational trier of fact might resolve the issue in favor of the non-moving party).

<u>ANALYSIS</u>

---

[2]  Although the present motion is styled a Motion to Dismiss and/or for Summary Judgment, it clearly presents matters "outside the pleadings;" therefore the Court treats it as a Motion for Summary Judgment.  Fed. R. Civ. P. 12(d).

To determine whether Plaintiff's claims withstand summary judgment, the Court applies the burden shifting analysis set forth in <u>McDonnell Douglas Corp. v. Green</u>, 411 U.S. 792, 802-05 (1973).  Ms. Imai must first establish a prima facie case of disparate treatment.  To do so, she must show (1) that she was a member of a protected class; (2) that she was qualified for her position; (3) that she experienced an adverse employment action; and (4) that similarly situated individuals outside her protected class were treated more favorably.  <u>Id.</u>  Once a prima facie case has been established, Defendants can meet their burden by adducing a legitimate nondiscriminatory reason for Ms. Imai's firing.  <u>Texas Dep't of Community Affairs v. Burdine</u>, 450 U.S. 248, 252-56 (1981).  Ms. Imai may, in turn, rebut Defendants' proffered nondiscriminatory reason by showing that the reason is pretextual.  <u>Id.</u>

It is undisputed that Plaintiff is a member of a protected class, based both on her gender, national origin and ethnicity, and also on her filing of a prior EEOC discrimination complaint.[3]  Furthermore, there is evidence on the record to

---

[3] On March 28, 2001, Ms. Imai filed a sex discrimination complaint with the Equal Employment Opportunity Commission, alleging discriminatory treatment by her supervisor Kathleen Hamlin.  (Pl. Opp. 16.)  The complaint was heard by an Administrative Judge on December 13, 2002 and on December 19, 2003, the Administrative Judge granted summary judgment in favor of Hale Koa.  (<u>Id.</u> 16-17.)  A timely appeal of this ruling was filed on April 15, 2004.  (<u>Id.</u>)  Because Ms. Imai's first EEOC complaint had not been finally resolved at the time of her firing, Defendants' contention that the first complaint was too remote in time to support a claim of retaliation is unavailing.

5

support the presumption that Ms. Imai was qualified for her position.  Her firing

represents an adverse employment action.

It is not clear that similarly situated employees were treated

differently than Ms. Imai with respect to the outcome of the investigation of the red

master keys incident.[4]  Ms. Imai received a more severe punishment than Ms.

Hamlin or Ms. Lelis as a result of the events surrounding the red master keys.

However, based on the conclusions reached in Hale Koa's investigation, the

differences in the character of the offenses accounts for the corresponding

difference in punishment.  It was found that Ms. Hamlin and Ms. Lelis were merely

careless in their handling of the red master keys.  Upon discovering that the red

master keys were missing, they immediately reported the loss and took steps to

recover them.  In contrast, the investigation concluded that Ms. Imai acted

intentionally when she took the red master keys and threw them in the dumpster,

and that she subsequently lied about her actions.  (Def. Opp. 12.)

Assuming arguendo that Ms. Imai has set out a prima facie case of

---

[4]  Neither is it clear that Ms. Imai was treated differently than similarly situated
employees prior to the red key incident.  She was the only female on the evening shift, and her
pay scale was lower than the male employees with whom she worked.  Yet, the pay differential
is arguably explained by the fact that Ms. Imai does not operate the same heavy machinery as the
male workers on the shift, a state of affairs with which she seems content.  (Def. Ex. A 44-45.)
Ms. Imai also contends that Ms. Hamlin hectored her at work with constant public criticism.
However, other employees report receiving the same treatment.  (E.g. Def. Ex. A 178.)

discrimination, Hale Koa puts forth a compelling nondiscriminatory reason for Ms. Imai's firing: the determination, after investigation, that Ms. Imai purposely took the red master keys, discarded them in the dumpster, and that she lied about these actions.  This reason is sufficient to place the burden on Ms. Imai to show pretext.

Ms. Imai argues that pretext may be inferred because of flaws in Hale Koa's investigation of the red master keys incident.  An inference of pretext can be based on "circumstantial evidence that tends to show that the employer's proffered motives were not the actual motives because they are inconsistent or otherwise not believable."  Goodwin v. Hunt Wesson, Inc., 150 F.3d 1217, 1222 (9th Cir. 1998).  When such indirect evidence is relied upon, it "must be 'specific' and 'substantial'."  Id.

Ms. Imai points to various factual disputes related to the red master keys incident and contends that these disputes raise a material issue as to whether the proffered reliance on the results of the investigation was pretexual.  She contends that the images captured on video do not show her carrying the red master keys, but rather the green master keys.  (Pl. Opp. 7.)  The parties also dispute how thoroughly Ms. Imai was searched by Ms. Hamlin and Ms. Lelis (Id. 4), whether Ms. Imai took a suspiciously circuitous route to the trash area (Def. Mot. 10), and who was in possession of the green master keys at the time Ms. Imai went to the

7

dumpster.  (Id. 12.)

However, none of these issues relate directly to the relevant question of pretext: whether the decision to fire Ms Imai was influenced by discriminatory motives rather than being based solely on proof gathered during Hale Koa's investigation of the incident.  Ms. Imai urges the Court to find that there exists a genuine issue of material fact "regarding the truth of whether the surveillance video depicts Plaintiff carrying the #2 Red lanyard."  (Pl. Opp. 19.)  Yet, even if this proof is controverted, or if the investigative procedures were flawed, this does not alone create a factual question as to whether discriminatory motives played a role in Ms. Imai's firing.  Ms. Imai fails to introduce "specific" and "substantial" evidence that the results of the investigation were internally inconsistent or unbelievable, therefore no inference of pretext can be drawn.

Ms. Imai contends that Ms. Hamlin's bias, as demonstrated by her conduct towards Ms. Imai and comments attributed to her by Ms. Imai, should be attributed to Hale Koa.  However, in order for subordinate supervisors' bias to be attributable to an employer, that supervisor must have been involved in the adverse employment action.  Bergene v. Salt River Project Ag. Improvement & Power Dist., 272 F. 3d 1136, 1141 (9th Cir.2001)("[A] manager's retaliatory motive may be imputed to the company if the manager was involved in the hiring decision.")

There is no evidence that Ms. Hamlin's alleged bias could have influenced the decision to fire Ms. Imai.  Ms. Nemoto proposed the termination while Mr. Lee was the deciding official.  (Def. Ex. H 245.)  Mr. Lee had no discussions with Ms. Hamlin regarding appropriate discipline for Ms. Imai.  (Id.)  Ms. Hamlin was herself the subject of disciplinary action stemming from the same investigation.  (Pl. Opp. 5.)  The only way Ms. Hamlin could be said to have influenced the decision to fire Ms. Imai is if Ms. Hamlin concocted and orchestrated the entire red master key incident in an effort to frame Ms. Imai.  There is no evidence to support such an attenuated theory.

Summary judgment is also appropriate as to Ms. Imai's hostile work environment claim.  To support a hostile work environment claim, a plaintiff must (1) show that he or she was "subjected to verbal or physical conduct of a racial or sexual nature; (2) that the conduct was unwelcome; and (3) that the conduct was sufficiently severe or pervasive to alter the conditions of the plaintiff's employment."  Gregory v. Widnall, 153 F.3d 1071, 1074 (9th Cir. 1998).  While Ms. Hamlin's criticisms of Ms. Imai's work may have been unwelcome, there is nothing in the record to show that they were of a "racial or sexual nature."  There is also no evidence that such treatment was sufficiently "severe or pervasive" to impact the conditions of employment.  Nor does Ms. Imai defend this claim in her

9

opposition to summary judgment.  (Pl. Opp. 15-20.)  Therefore, summary judgment on this issue is granted.

CONCLUSION

For the foregoing reasons, Defendant's Motion for Summary Judgment is GRANTED.

IT IS SO ORDERED.

Dated: Honolulu, Hawaii, December 31, 2008.



 /S/ Barry M. Kurren       
Barry M. Kurren
United States Magistrate Judge

Imai v. Hale Koa Hotel, et al., Civ. No. 04-00583 BMK: ORDER GRANTING DEFENDANTS' MOTION FOR SUMMARY JUDGMENT